The next case, number 21-1705 and number 21-1707, United States v. Angel Manuel Carmona-Alomar. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. May it please the court, I am attorney Edward Suedo on behalf of the appellant, Mr. Carmona-Alomar. May I reserve three minutes for this case? Yes. Three minutes? Yes. Thank you. Here, the district court crafted Mr. Carmona's sentence from a fundamental error of law. That a mind-run case of possession of a machine gun was a case in which the defendant has no criminal history. But in the misconception that came from this sentence from its very inception. A mind-run case is not some minimally culpable or hypothetical case. It is a guideline calculated for specific offense that accounts for three separate things. First, for the offense of conviction in this case, 9-2-0. Just so I understand, are we on plain error in your view or not? No, we are not on plain error. Because you objected below to the reliance on that statement? Yes, we objected to the court's characterization of a mind-run case. This offense was one in which the defendant had no criminal history. And when we objected, the court leveled down and repeated the same. But the question for me is, it doesn't say mind-run, just to be clear, right? The district court doesn't use those words. And I guess what I'd like your answer to is, it is the case that under our case law, you can consider community factors in certain circumstances in which we're dealing with the machine gun case to give context to the assessment of the term. And the circumstances in which we've said you cannot do that are machine gun possession cases in which the person had no criminal history, correct? Correct. Okay. So how do we know what's leading you to be confident that in that little colloquy where the district court says this ordinary part of first circuit case law, he's not just accurately describing the circumstances in which we've said you cannot rely on community factors, which would be correct, and then suggesting this isn't like that because there are additional factors here that were not present in cases like the Vera-Vera case? Well, in cases like the Vera-Vera case, the lack of criminal history wasn't the deciding factor. The issue there was that the court failed to tie the specific offense because there was nothing to tie it to, and there was no other characteristic of the defendant. Here, there is another characteristic of the defendant, and that's what our case law is about. We have a lot of cases in which community factor scores, Machados, acknowledge that. And even the split en banc opinion, there's an acknowledgment even by the three judges who would have affirmed or reversed the sentence in that case. They also identified a number of our cases in which you can look at community factors for contextualizing other individual factors. But when the only thing there is is possession of the machine gun, the community factors in the Vera-Vera case is too much disconnected from the individualized sentence. So why isn't it fair to read the judge here is simply correctly describing that feature of our case law rather than taking the position that the only minor case is a case in which a person has no criminal history? Well, here, the court—that was the first statement from the court that it was an ordinary case. But he's doing it in the context of a question as to whether he can rely on the community characteristics, right? We understand that the court can rely on community characteristics, but as both opinions in the en banc decision of Flores-Gonzalez highlighted, in that case, the characteristics of the community, the staff, the data and statistics weren't challenged here. They were very much challenged. So the court's conception of the community characteristics— Well, that's a different argument. That's not an argument about whether that passage showed that the district court erred by describing mind-run cases under the guidelines as only cases with no criminal history. That's the contention that even if that wasn't error, there's a separate ground for a problem here because the community characteristics weren't reliable based on reliable evidence. I hear the—there's no single mind-run case of possession of a machine gun. 2P2.1 carves out separate cases for mind-run. So in this case, the mind-run case is a 922 offense where the defendant had a previous machine gun conviction and its criminal history category 3. What I'm saying is even if that's true, nothing in our case that I'm aware of says that in a mind-run case of that sort where somebody has a prior criminal history for a prior offense, particularly with somewhat late conduct, the judge can't then vary based on community characteristics on the ground that those concerns about general deterrence then are individualized as the defendant because he's a repeat offender, which makes him more likely to contribute to the problem, whereas a first-time offender with no criminal history stands in a different position under our case law with respect to whether you can rely on the community characteristics. We agree with your statement that community characteristics can be reliable. The problem is that here there is no nexus between the characteristics, the specific characteristics— Well, what was the prior offense? What's the criminal history? The prior offense was it was a 922-03 machine gun conviction. But that's—why isn't that pretty relevant to the general deterrence point, which triggers, relies on community characteristics, which is this person is a repeat offender with the very gun that's contributing to the community problem? I think for two reasons. First, it's a fact we're already accounting for in the guidelines, and the court doesn't explain why it deserves additional weight, but also the— Am I right that the factor considered by the guidelines is that there's a prior offense for drug or violence, not that the prior offense was the exact same offense, the 922-0 offense? Or that in Puerto Rico there's a particular problem of firearm offenses. There's two statements I want to address, but I think it's very important to stress that here we objected to the subjective characterization of the gun problem in Puerto Rico. We are not saying that we can't consider community factors, but the statistics and data that the government provided were unreliable, and having had the opportunity to challenge that, we would have shown significant inconsistency which we sort of showed and previewed in our defined brief to the government. Now, regarding the— But that objection was not made below. We objected to the court's sentencing amendment, which was filed a day before sentencing, and we asked the court to either strike a memorandum or give us additional time to reply. We were denied that opportunity, and at the hearing we, again, raised the objection, and so we never had the opportunity, even though we requested it, to challenge the data. And as the court has said from Florentino Saez, statistics not based on reliable information do not have meaning or are meaningless in this context. They need to be subjected to adversarial testing before the district court, and that never happened. Is that further than your brief to us, the point you're now making? Yes, Your Honor. I can point out and—I can limit the specifics, but that is— Did the court rely on the government's statistics, or did the court just, in a general sense, cite violence in Puerto Rico without specific— I'm talking about the prejudice that may have evolved toward that particular instance. Yes, Your Honor. The court relied on statistics cited by the court. And those were specifically prejudicial because, for example, it cited a number of murders in Puerto Rico. And that is simply an absolute number without any context. And it's a—the government stated at the hearing that there were, in 2001, there were more murders than in 2001. However, that was during the year of COVID, and we didn't really have a context for this sort of trend. Why won't your briefs get this into play? This is a guideline that has been established for three decades now. So the historical trend might—should have an impact on it. And that's the opportunity we never had, to place a problem context and actually simply just investigate the data that the government provided in that important way. I'm rebuttaling and addressing this, but I'm just not seeing it to be helpful to the point where, in your opening brief, you make the argument and now make it. It is definitely helpful. I think that you just hit that ground to what I just wanted to call the first point. Absolutely. The question was regarding including this in 2.2.183 as a finding file. And the guidelines include this, the previous machine gun convictions, in this category. And when you look at the relative probability, it's—you know, crime and violence is a significant net. It's a broad net that encompasses a lot of different things. And this court has characterized it as such a machine gun— But that's not what she's asking you. I think she's asking you that crime and violence generally would include this part of the conviction. But the question is, why would the court be entitled to take into consideration that the particular crime or violence is the same crime or violence that is part of that new crime? Why wouldn't that be something that would be worked at a later date? I think we have two reasons for that. First, by expressly including the previous possession of a machine gun, it is expressly— And applying it to a guideline about possession of a machine gun, it is expressly recognizing that this will happen. That there will be situations where the previous conviction was for a machine gun. And second, the court didn't simply say that this was a—that he had committed the same offense. It said that committing the same offense showed that there was a problem—showed the problem that was out there. And out there were people, young persons, who heard it. But again, we never— He tried to get charged. No. But you didn't say that, you know, because this is the second time around, that he charged him for it. Well, the fact that it was the second time around, that would be the case in— Again, in any minor case that—in the minor of this case where the defendant had the previous conviction. And ultimately, the court not only considered the fact that it was a— It didn't look at the guideline. It specifically tied it to community concern. So it wasn't just that he committed the same offense. Why? It was that the same offense showed the problem out there with young people who heard it. And that characterization was probably because it wasn't a proper reference point. The problem out there, the crime rates, and what was done by them, that was a subjective characterization that we never had an opportunity to explain to the court and put it in proper context. Thank you. Thank you, counsel. At this time, counsel for the government, please introduce yourself on the record to begin. Okay. Good morning. Good morning, and may it please the court. Greg Conner for the United States. The government is asking this court to affirm, because the district court imposed a reasonable sentence for the new machine gun offense and for the revocation of his supervised release. Now, first, regarding the machine gun offense, Carmona received a within-guideline sentence for machine gun possession and then served his sentence, got out, and within a year and a half of his release, he committed the same offense. The district court took issue with this and pointed to the insufficiency of that prior sentence in deterring the same re-offense. This court sanctioned that exact reasoning in Pedroza-Orego, where, again, the situation was similar. The defendant had been convicted of machine gun possession, received a within-guideline sentence shortly after his release from the first sentence, re-offensed with a firearm offense, in that case, a felony possession conviction, and the district court in the Pedroza case stated some sort of exasperation that you received a guideline sentence the first time. There's no way you're receiving a guideline sentence the second time. And what this court said was the district court permissibly considered the insufficiency of the within-guideline sentence to deter a similar offense. So when we argue in our— that the first one is insufficient. Well, no. I'm making a few related points regarding this individual's history and characteristics. This would not be different, for example, if he received a different within-guideline sentence, for example, if a low end. That is not taken into account in the prerequisites for his base offense level. What they're saying regarding his base offense level is that it includes a variety of crimes, including machine gun possession. So in their view, that's already baked in. Right. The problem with that— In other words, so if he was previously convicted of a robbery with a pistol and not a machine gun, that's a criminal violence. And so when you say that it wasn't a deterrence, but the court's point here is that it's the same previous criminal violence, which they're arguing whether it's robbery or whether it's machine gun, the enhancement is still already baked in. Okay, I think I agree with the point you're making. However, the reasoning this court used in the Pedroza-Arango case, in Vargas-Martinez-Gonzalez-Flores, is it's not just the prerequisites you're discussing for the base offense level. There are related concerns such as— This same guideline premise, base offense level? There are some within the same guideline provision generally, 2K21. I'm forgetting which one is— The subsection 8 versus 84? I think that's the key piece. All they're saying is you're varying from this guideline. The judge is varying from this guideline. We want to make sure that they're varying on a basis that is not already accounted for by the guideline itself. And their contention is this guideline already accounts for the prior offense being a machine gun, so that's not a ground for variance. Is the case you're citing to us just like that, and says even when you're varying from this guideline on that basis, it's fine to do so? I'm not going to go so far as to say it's just like this situation. Forget the word just like. Is it a case involving the application of this same guideline, in which we said even though that's the guideline at issue, when the offense that was prior is the same offense, you can vary on that basis? The cases don't go that far. They do deal with subsection 8A3 and 8A4. They do include the same prerequisites, and it's not looking at the prerequisites for the base offense level. It's looking at related concerns about criminal history, the same ones that the panel brought up with my friend on the other side, the fact that he is a prototypical recidivist. He got out and reoffended with the same offense, the speed with which he did that, that he did not learn from the first interaction with the criminal. I saw a key here was that in addition to it being a second offense with the same machine gun, the judge in justifying the variance was pointing to the statistics about the significance of firearm offenses in Puerto Rico, which my understanding of our case law is that special factor not accounted for in the guidelines. Why would the guidelines specifically account for high incidents of crime in Puerto Rico? That's fine for a judge to do if there's some special characteristic, which could be the repeated use by that offender of a machine gun. So that would then justify the variance, but that's independent of the argument that the mere fact that it's a repeated offender alone would justify the variance. I agree with Judge Barron, and I just want to make the point that a lot of these are related in the judge's mix of factors. So, for example, in the Santa – excuse me – Santa Otero case, this court looked to the judge's – and Pedroza-Orengo – this court looked to the judge's connection between the defendant's history and characteristics and his concern about community violence regarding firearms. That was true in Pedroza, even though it was a possession case, which he takes issue with, and it was true in Santa Otero. So that history does justify a connection. So two points then on that. One, could you address the contention that was made on appeal here about the lack of an opportunity by the defendant to contest the statistical basis for the community characteristics that were relied on? And then two, we'll do that one first. Okay, so what took place is that there were – before you get into what took place, do you understand the appellant and the opening reader to have made the argument that they're making today? They allude to it, Judge Barron, but the request below was for a continuance, and the district court denied that. And then they need to – or, excuse me, both before and after they made submissions to the court regarding the statistics, and then at the hearing they were able to dispute the statistics, which is probably why on appeal they don't say that the district court erred by not granting the continuance. There was debate below regarding the relevance of the statistics. And again, pointing, Your Honor, to the San Otero case. Wait, wait, wait. Just procedurally, you're saying that they submitted their own statistics. I mean, is that part of the record? And did the court acknowledge, in consideration of those competing statistics? The district court acknowledged the government's statistics regarding the increase in murder. As far as the – there was debate about the significance of the statistics by the defense. I don't think the district court was persuaded and didn't say that that's part of my conclusion regarding community violence, but the district court had – That wasn't the question. The question is, did the court acknowledge and seek any consideration of them? What if the court rejected them as a different proposition? How do you stop there? They're saying that they were prejudiced because they weren't granted a continuance but that they didn't have a chance to fairly debate the accuracy of your statistics. So I'm just trying to figure out if the court at least acknowledged that they were competing statistics, that it considered. They could have considered it and said, I'm glad that the government's statistics weren't persuasive. But if they wanted to have competing statistics considered and the court rejected that altogether, that's problematic in my mind. Okay, what took place is that the district court did acknowledge that they had responded to the government's statistical analysis. I'm forgetting the exact wording, but the district court said, you responded to that, and very well, I might add, something to that effect. So yes, there was acknowledgment that both parties had presented an argument regarding these statistics. And I don't have the transcript in front of me, but it's at the end of the session here. So just briefly, I want to mention that the panel had inquired earlier about criminal history. Part of the criminal history that we contended was not, part of the guideline range was that there was a threat incident that took place when Carmona was at a halfway house. And what took place is he was about to be searched and he shouted, this effing bald guy, thinks I have something, wait until I get him at the street, or get him in the streets. And both the government and the district court took that as a threat of violence. Carmona only takes issue with this by saying that either it was isolated or not direct, but if you look at the next line after the threat, the present report says it was a direct threat to the individual, and he never objected to that paragraph. So that also was a permissible consideration. Go ahead. Could you just, that part of the colloquy which they contend is the district court saying that a mine run case is a case in which there's no criminal history. I take it you don't, you would agree that if that's what the district court was saying, that is not an accurate statement about the guideline part. I would agree with that, and I think Your Honor highlighted the fact that this shouldn't be taken out of context. It's part of a colloquy where the district court is discussing both whether Carmona's case, everything is addressed by the guidelines, and whether that makes his case analogous to Rivera-Rios and cases where there are no criminal histories. So I agree that they're seizing on that one line, but it takes it out of context to say that. And then I also wanted to briefly mention that I take it there was no, was there an objection at any point to the notion that the district court was understood, did the defendant below say, well, we're objecting because you're treating migrant cases as the only cases in which there's no criminal history? Not quite, because the colloquy then moved to those cases. So it then became... It became a different fight about that. Right. And just briefly, as far as the nexus between the individual and the community, the government argued and the district court agreed that the photo the government used in the sentencing, two photos, the government used in the sentencing memorandum demonstrated that this individual had an affinity for firearms. We're at the appellate stage. Carmona has never disputed the fact that it is him in the photo with the three firearms, including one that's a long gun with a drum magazine. And the point we wanted to make is both that the district court pointed to that for the connection and that he has never been punished via the guideline range for having more than two guns. He has three guns. He accepts that those are operable firearms and that that was him. And he has never been penalized for the amount of guns that he has. And briefly, I want to address the revocation sentence. There is a six-month upward variance and there isn't much of a contest from Carmona in his opening brief. His argument is that the misperceptions from the sentencing hearing carried over and that the district court imposed a substantively unreasonable sentence. But as we quote in our brief, this court has affirmed two-year revocation sentences from lower ranges several times, including in Vargas-Martinez and Cruz-Oliveira, where there were repeat firearm offenses. And if there are no further questions, we would ask the court to affirm. Thank you. Thank you, counsel, at this time. Counsel for the appellant, please reintroduce yourself on the record. You have a three-minute rebuttal. Good morning, again. Turning it your way, we have the appellant. Come on up. In regards to the court's question about where we made that argument, we objected at the sentencing hearing. We objected in our opening brief to the statistics regarding the unemployment as an aggravating factor. When the government brought the statistics in its reply brief, in its brief, then in our reply brief, we said we explained why government arguments about the statistics should be rejected. And that is in the reply brief. Statistics about unemployment or statistics about something else? I'm sorry? Statistics about unemployment or statistics about gun violence? We specifically, in the opening brief, we discussed the statistics about unemployment. When the government raised the statistics in general that it had provided, we had already objected to not having an opportunity to respond to the sentencing hearing. Then we had to, in our reply brief, explain why it should be rejected. Why didn't we challenge the statistics? In the opening brief. Well, because we were challenging the fact that we never had an opportunity. Why don't you do that in your opening brief? I believe we already did. Not that we didn't challenge the statistics themselves in our opening brief. In the opening brief, you challenged the opportunity to challenge the statistics. I may be incorrect in how I I remember the section on the employment. But that was only about employment? Simple question. In your opening brief to us, is there some place where you say we never got a chance to object to the crime statistics? I don't think that statement is made in our opening brief. I think it's made in our reply brief in response to the government raising that argument on it. But the problem with doing it that way is the government then can't respond to it. And since the problem was caused by the district court, you're supposed to do that in your opening brief so the government could then respond. Then you get your reply to respond. I would like to address some of the points that the government has made here first. Can I just quickly ask you on this? The government argues that in the full context of that conversation, what the court was discussing was the cases that were cited in the defendant's sentencing memorandum. And I understood your argument to be look through a prism at the two or three pages where the court is discussing an ordinary case. Read ordinary from my mind. And the court just gets that definition completely wrong. Why is the government wrong if we look at the broader context? The discussion between the court and the defense counsel eventually moved to the cases that were cited. However, the court's comment that in an ordinary machine gun case, the defendant has no criminal history was a direct response to our characterization that in this case, the guidelines accounted for every factor of this case, including Mr. Kavon's previous conviction of criminal history. So when we argued that that was part of the guidelines calculation, the court's response was no, because I think in ordinary cases, one in which the defendant has no previous conviction. But in other words, context will tell us something else in support of what you just argued today. I believe so. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.